**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian S. Sharp, | No. CV-17-08133-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Brian S. Sharp ("Sharp") seeks review under 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security ("Commissioner"), which denied his application for disability benefits. For the following reasons, the Court finds that the administrative law judge's ("ALJ") decision was based on reversible legal error and remands for further proceedings.

Sharp is a 53-year-old man who previously worked as a repairer and construction worker and alleges he became disabled in February 2013.[1] In April 2013, Sharp filed an application for disability benefits. (A.R. 137-38.) The claim was denied on August 7, 2013 (A.R. 80-83), and again upon reconsideration on December 13, 2013 (A.R. 89-91). Sharp then filed a written request for a hearing on January 24, 2014. (A.R. 92-93.) On June 23, 2015, Sharp appeared and testified at a video hearing at which an impartial vocational expert also appeared and testified by telephone. (A.R. 43-62.) On September 8, 2015, the

---
[1] In his application, Sharp initially alleged a disability onset date of January 1, 2011, but he amended the onset date to February 24, 2013 at the hearing. (A.R. 46.)

ALJ issued a decision that Sharp was not disabled within the meaning of the Social Security Act. (A.R. 26-38.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Sharp's request for review on March 17, 2017. (A.R. 8-14.)

## LEGAL STANDARD

The Court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). The Court should uphold the ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* Put another way, "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court should uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation," but the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and internal quotation marks omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (citations and internal quotation marks omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* Importantly, however, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ. *Id.* at 1121.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R.

§ 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

## BACKGROUND

At step one, the ALJ found Sharp met the insured status requirements of the Social Security Act through March 31, 2016 and had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.[2] (A.R. 31.) At step two, the ALJ found that Sharp had the following severe impairments: diabetes and degenerative disc disease (DDD) of the back. (A.R. 31.) The ALJ also found that Sharp had the following non-severe impairments: coronary artery disease and obesity. (A.R. 31-32.) At step three, the ALJ determined that Sharp did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (A.R. 32.) At step four, the ALJ found that Sharp had the residual functional capacity to perform medium work with the following limitations: limited to occasional exposure to heights, moving machinery, and temperature extremes. (A.R. 32-36.) The ALJ further found that Sharp was unable to

---

[2] It is not clear why the ALJ used the alleged onset date of January 1, 2011 given that the ALJ noted in her opinion that Sharp amended the alleged onset date to February 24, 2013 at the hearing. (A.R. 29.)

perform any past relevant work. (A.R. 36.) At step five, the ALJ found that, considering Sharp's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Sharp can perform, including hand packager, order filler, and dishwasher/janitor. (A.R. 37-38.)

Sharp argues that the ALJ's decision is defective for three reasons: (1) the ALJ erred at step two in failing to consider Sharp's attacks of cardiac arrhythmia; (2) the ALJ erred at step four in rejecting Sharp's symptom testimony; and (3) the ALJ erred at step four in determining Sharp's RFC without reference to nonexertional limitations from Sharp's cardiac arrhythmia. (Doc. 13.)

As explained below, the Court agrees the ALJ committed reversible error during step four.

I. <u>Whether the ALJ Erred at Step Two in Failing to Consider Sharp's Attacks of Cardiac Arrhythmia</u>

Sharp argues that the ALJ erred in failing to consider his attacks of cardiac arrythmia at step two. (Doc. 13 at 1, 11.)

At step two, the ALJ considers whether the claimant has a "severe" impairment, 20 C.F.R. § 404.1520(a)(4)(ii), defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," *id.* § 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals [sic] ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

Sharp testified at the hearing that his atrial fibrillation (or atrial arrhythmia) is the main condition that keeps him from working. (A.R. 51.) Yet the ALJ did not even consider atrial fibrillation at step two. The only cardiac condition the ALJ addressed was coronary artery disease (A.R. 31), which is an entirely different condition.

Ninth Circuit law is not a model of clarity concerning how to evaluate claims of step-two error. Some cases suggest that, although it is error for an ALJ to fail to characterize a particular impairment as "severe" during step two, the error can be

disregarded as harmless if the ALJ properly addresses the impairment during later steps. *See, e.g.*, *Lewis v. Astrue*, 498 F. 3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless. . . . The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) ("[T]he ALJ did not find that Burch's obesity was a 'severe' impairment . . . . Assuming without deciding that this omission constituted legal error, it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor."). Other decisions suggest that a claimant can't complain about an ALJ's failure to identify a particular impairment as "severe" during step two so long as the ALJ determined the claimant also had other impairments that so qualify. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citation omitted) ("Buck misunderstands the purpose of step two in the analysis. Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. . . . Moreover, step two was decided in Buck's favor after both hearings. He could not possibly have been prejudiced.").

Given these difficult-to-reconcile precedents, the Court declines to definitively resolve whether the ALJ "erred" during step two by failing to characterize Sharp's atrial fibrillation/arrhythmia as a severe impairment. The dispositive issue in this case is whether the ALJ properly evaluated the evidence and testimony concerning that condition during later steps and factored that condition into the RFC.

II. <u>Whether the ALJ Erred at Step Four in Rejecting Sharp's Symptom Testimony</u>

    A. **Legal Standard**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Id.* (citations and internal quotation marks omitted). The ALJ found that Sharp had satisfied this first step. (A.R. 34 ["[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ."].)

If the first step is satisfied, and "there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina*, 674 F.3d at 1112 (citations and internal quotation marks omitted). Such testimony can't be rejected simply because it can't be verified by objective medical evidence. 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Here, the ALJ did not find there was evidence of malingering, so she was required to provide "specific, clear and convincing reasons" to reject Sharp's testimony.

"A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). "[P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494. Additionally, the ALJ must "elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony." *Burrell*, 775 F.3d at 1138.

B. **Sharp's Testimony**

Sharp testified that his atrial fibrillation is the main reason he is unable to work full time. (A.R. 51.) He testified that when he goes into atrial fibrillation, he has chest pains and difficulty breathing and his pulse goes "sky high." (*Id.*) He also has headaches as a result of the atrial fibrillation. (A.R. 55-56.) He claims that he has been going into atrial fibrillation two or three times a week, on average, since February 2013. (A.R. 51-52.) When the atrial fibrillation comes, he says it lasts for thirty minutes to three hours. (A.R. 52.) During episodes of atrial fibrillation, he has to stop moving entirely—he cannot work through it. (A.R. 52, 58.) He does not know what causes it to start at any given time. (A.R. 52.) He had an ablation procedure, but he testified it did not help with the condition. (A.R. 53.)

Sharp testified that he also gets headaches that are not related to his atrial fibrillation. (A.R. 56.) When he has headaches, he feels "major pains that radiate from the back of [his] neck all the way up into [his] temples." (A.R. 56.) He has to lie down and use his oxygen and normally cannot work through them. (A.R. 56, 58.)

Sharp also testified that "[b]oth [his] shoulders hurt real bad all the time." (A.R. 51.) He had a left shoulder replacement in 2014, and he testified that the pain had resolved somewhat initially, but it still aches now. (A.R. 54.) He testified that he could not lift 30 to 40 pounds repeatedly throughout the day. (A.R. 54.)

The ALJ noted the testimony summarized above as well as information Sharp provided about these conditions, his diabetic neuropathy, and his degenerative disc disease in his Exertional Daily Activities Questionnaire (A.R. 160-62) and Function Report (A.R. 171-79).

The ALJ then found that Sharp's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely credible." (A.R. 35.)[3] Following

---

[3] The Court notes that the ALJ's use of the phrase "not entirely credible" provides no information about the weight the ALJ actually afforded the testimony. But given that the RFC does not contain the limitations to which Sharp testified, the Court will assume the ALJ gave no weight to Sharp's testimony. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010) (noting that "[t]he statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight

that statement, the ALJ summarized the objective medical evidence and the medical opinions in the record and provided four reasons in support of her RFC finding: (1) Sharp's "fairly active daily activities" support the RFC; (2) he received "conservative treatment"; (3) "his impairments are stable"; and (4) there is a "relative lack of any recent treatment of import without requiring recent hospitalizations." (A.R. 34-36.)

C. **Analysis**

Here, as in *Brown-Hunter*, the ALJ erred in "fail[ing] to identify the testimony she found not credible," and, as such, could "not link that testimony to the particular parts of the record supporting her non-credibility determination." 806 F.3d at 494. Consequently, the Court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [the] pain testimony." *Id.*; *see also Burrell*, 775 F.3d at 1139 (noting that ALJ erred in "not mak[ing] a specific finding linking a lack of medical records to Claimant's testimony about the intensity of her back, neck, and head pain"). After making her boilerplate statement that Sharp's statements "not entirely credible" (A.R. 34), the ALJ merely summarized the medical record and the findings of the independent medical examiners. "[P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494.

Furthermore, although the ALJ provided four reasons in support of her RFC finding, this is not the same as "identify[ing] what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138 (citation omitted). And even assuming these were also reasons why the ALJ rejected Sharp's testimony, they cannot be upheld as clear and convincing.

With respect to Sharp's daily activities, the ALJ erred in "not elaborat[ing] on *which* daily activities conflicted with *which* part of Claimant's testimony," *id.* at 1138, and, thus, the Court cannot evaluate whether this reason was convincing. Moreover, it is not clear why any of the cited activities are necessarily inconsistent with an inability to work due to

the trier of fact gave the testimony," rendering it "meaningless boilerplate").

- 8 -

unpredictable episodes of atrial fibrillation.

The ALJ also mentioned "conservative treatment," yet she acknowledged that Sharp underwent an ablation procedure to address his atrial fibrillation (which didn't work). (A.R. 35.) The ALJ didn't attempt to explain why she viewed this particular procedure as conservative and didn't identify other courses of treatment that Sharp should have pursued. Moreover, Sharp identifies evidence in his brief suggesting his course of treatment was, if anything, aggressive. (Doc. 13 at 5-6, citing A.R. 378, 442, 535-36 [Sharp was placed on Warfarin during one hospitalization episode related to his heart condition, "underwent cardioversion with injection of Adenocard (adenosine), a drug used to . . . restor[e] normal sinus rhythm," during a different hospitalization episode, and "underwent radiofrequency ablation" during a separate doctor visit].)

Next, the ALJ noted that Sharp's impairments were stable, but again, it is not clear which impairments the ALJ was addressing or how this purported stability necessarily conflicted with Sharp's testimony. *See Petty v. Astrue*, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008) ("[A] condition can be stable but disabling."); *Smith v. Astrue*, 2012 WL 5269395, *9 (D. Ariz. 2012) ("Although a treating physician indicated that Plaintiff's eye condition was 'stable' and no further treatment was recommended . . . , this . . . does not make Plaintiff's eye condition less of an impairment . . . .").

Finally, the Court cannot even discern the meaning of the ALJ's last proffered reason—the "relative lack of any recent treatment of import without requiring recent hospitalizations"—and, thus, concludes that it doesn't qualify as a clear and convincing reason for rejecting Sharp's testimony.

Accordingly, the Court finds that the ALJ did not provide sufficiently specific reasons for rejecting Sharp's testimony. Moreover, even if the Court infers that the reasons the ALJ provided in support of her RFC finding were also her reasons for rejecting Sharp's testimony, these reasons cannot be upheld as clear and convincing. This error was not harmless, as Sharp testified that he has episodes of atrial fibrillation on average two or three times a week, lasting for thirty minutes to three hours, during which he cannot work (A.R.

51-52), and the vocational expert testified that an individual who experienced unpredictable, unscheduled breaks for thirty minutes to three hours due to impairments could not sustain a job (A.R. 61).

III. <u>Whether the ALJ Erred at Step Four When Determining Sharp's RFC</u>

"[A]n ALJ must take into account a claimant's symptom testimony when determining the RFC." *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017). Here, the ALJ failed to do so—the RFC did not account for Sharp's testimony that he experiences frequent, disabling bouts of atrial fibrillation. This error was not harmless, for the reasons stated above.

IV. <u>Scope of Remand</u>

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). This applies particularly "[i]f additional proceedings can remedy defects in the original administrative proceeding." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (citation omitted). But there is an exception to this rule, known as the "credit-as-true" rule, under which the court may remand with instructions to calculate and award benefits. For this rule to apply, a three-part test must be satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020. Importantly, however, courts are required "to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021 (citing *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003)).

Here, the Court declines to remand for an award of benefits because further administrative proceedings would arguably serve a useful purpose. Other than Sharp's

testimony, there is little evidence in the record indicating that Sharp's atrial fibrillation is disabling. Furthermore, even if the credit-as-true rule were otherwise satisfied, the record as a whole "creates serious doubt that [Sharp] is, in fact disabled." *Garrison*, 759 F.3d at 1021. Although various medical records note the existence of Sharp's atrial fibrillation, no medical opinions in the record suggest Sharp is incapable of working—Dr. Nichols's assessment only stated that Sharp wouldn't be able to "*perform lifting* during his episodes of atrial fibrillation" (A.R. 333) (emphasis added), which is not the same thing as a medical opinion that Sharp is disabled from performing any type of work.

Accordingly, **IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated**, and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 5th day of March, 2019.

Dominic W. Lanza
United States District Judge